# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SLIMMARIE PERRYWATSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 0639 |
| | ) | |
| v. | ) | **Magistrate Judge** |
| | ) | **Jeffrey Cole** |
| UNITED AIRLINES, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Slimmarie Perrywatson was a flight attendant with United Airlines from 1978 until she was terminated on May 18, 2007. She appealed her termination, along with earlier disciplinary actions, through her union – the Association of Flight Attendants ("AFA") – before an arbitration panel. The hearing process concluded on August 6, 2008, and the panel upheld the termination and disciplinary charges on December 26, 2008. She filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") on May 7, 2009. She received a right-to-sue-letter about two weeks later because her charges were untimely.

Ms. Perrywatson then filed suit in the Northern District of Ohio on August 19, 2009, and the case was transferred here. Her three-count Amended Complaint is somewhat difficult to follow and is not as faithful to the commands of Rule 8(a) and (d)(1), Federal Rules of Civil Procedure, as it might be. The allegations regarding age discrimination, disability discrimination, retaliation for having filed grievances and workers' compensation claims are combined indiscriminately and

1

incorporated by reference in each of the three Counts, which purport to be based on separate theories – at least according to their captions. The allegations of Count One are fully incorporated by reference in Counts Two and Three and the allegations of Counts One and Two are fully incorporated by reference in Count Three.[1]

Count One, captioned "Retaliation," alleges that United fired Ms. Perrywatson for having filed grievances against United in 2004 and 2005 and for pursuing claims through the Illinois Workers' Compensation Commission. (¶20). While Count Two, captioned "Disability and Age Discrimination," predictably charges that Ms. Perrywatson's termination in May 2007 by United was an act of "age and disability discrimination against her," it then goes on to allege that the "actual reason" for her termination was, in addition to her age and disability, her having filed "grievances from [United's] disciplinary actions and her [having] fil[ed] workers' compensation claims." (Count Two, ¶24). Count Two is also brought against the Association of Flight Attendants. Count Three, captioned "Wrongful Discharge," alleges that United failed to observe its own rules and regulations and contractual agreements regarding termination of employees. Count Three concludes with the allegations that plaintiff has been damaged "in an amount in excess of $25,000." (¶33). This allegation of damages also appears in Count One. (*Id.* at ¶21).

The Amended Complaint explicitly bottoms jurisdiction on 28 U.S.C.§§ 1331 and 1343 and alleges that the action is brought pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq*, and the Age Discrimination in Employment Act of 1967, as amended. There are no allegations regarding the parties' citizenship or that the damages exceed $75,000, exclusive of

---

[1] Ms. Perrywatson had charged United with discrimination under Title VII, but has since dropped that claim.

interest and costs, as required by 28 U.S.C. §1332 where subject matter jurisdiction over one or more counts is based on diversity of citizenship. Finally, there are no references to any state statute or regulation on which a claim for wrongful discharge or retaliation might independently rest. To the extent that the Amended Complaint was intended to raise independent state law claims based upon Ms. Perrywatson having filed grievances and having made workers' compensation claims, there is supplemental jurisdiction. *See Anderson v. AON Corp.*, 614 F.3d 361, 364 (7th Cir. 2010); *Miller v. Herman*, 600 F.3d 726, 738 (7th Cir. 2010).[2] United has moved for summary judgment.

# I.
# BACKGROUND

## A.
## Summary Judgment Procedure Under Local Rule 56.1

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. Local Rule 56.1 requires a party seeking summary judgment to include with its motion "a statement of material facts as to which the ... party contends there is no genuine issue and that entitle the ... party to a judgment as a matter of law." Local Rule 56.1(a)(3); *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Each paragraph must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). The party opposing summary judgment must then respond to the movant's statement of

---

[2] The Amended Complaint's reference to §1343 is essentially superfluous. *See Roden v. American Federation of State, County, and Municipal Employees, Council 24*, 2009 WL 40001 (7th Cir. 2009); *Miles v. United States*, 416 F.3d 551, 554 (7th Cir. 2005). That section provides, *inter alia*, that the district court shall have original jurisdiction of any civil action authorized by law to recover damages for injury to a plaintiff's person or property because of the deprivation of any right or privilege of a citizen of the United States, or to recover damages under any act of Congress providing for the protection of civil rights.

proposed material facts; that response must contain both "a response to each numbered paragraph in the moving party's statement," Local Rule 56.1(b)(3)(B), *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Bay Area Business Council, Inc.*, 423 F.3d at 633, and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C); *Ciomber*, 527 F.3d at 643.

If the moving party fails to comply with the rule, the motion can be denied without further consideration. Local Rule 56.1(a)(3); *Smith v. Lamz*, 321 F.3d 680, 682 n.1 (7th Cir. 2003). If the responding parting fails to comply, its additional facts may be ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted. Local Rule 56.1(b)(3)(C); *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008); *Cracco*, 559 F.3d at 632; *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). District courts are "'entitled to expect strict compliance'" with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does follow the rule's instructions *Cracco*, 559 F.3d at 632; *Ciomber*, 527 F.3d at 643; *Ammons v. Aramark Unif. Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). The court is not required to hunt for evidence in the record that supports a party's case if a party fails to point it out; that is the job of counsel. *See Bay Area Business Council.*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission).

Ms. Perrywatson has neither responded to United's Rule 56.1(a) statement of facts nor submitted any additional facts of her own under 56.1(b). As such, United's properly supported factual assertions are deemed admitted and form the basis for consideration of this summary judgment motion.

**B.**
**Facts**

From August 1, 1993, until she was terminated, Ms. Perrywatson worked as a flight attendant for United, working out of that airline's hub at Chicago's O'Hare International Airport. (*United's Statement of Material Facts* ("St."), ¶ 2). During her employment, she was represented by the AFA, which was a party to a collective bargaining agreement with United. (St., ¶¶ 3-4). Among other things, the collective bargaining agreement provides flight attendants with certain protections against being discharged from employment without just cause. (St., ¶ 5). It includes a grievance procedure for purposes of settling any dispute that arises under the agreement, including disputes over the allegedly improper dismissal of an employee covered by the agreement. (St., ¶ 6). This contractual grievance procedure culminates in an arbitration hearing before the System Board of Adjustment—an arbitral body created by the collective bargaining agreement in accordance with the mandate of the Railway Labor Act ("RLA") (St., ¶ 6).

Under the collective bargaining agreement, prior to August, 2008, when an employee engaged in an alleged action or inaction that may have resulted in suspension or discharge, United would issue a letter of charge setting forth precisely what occurred. (St., ¶ 7). The employee was then entitled to a hearing over the letter of charge. (St., ¶ 7). A member of United's management presided over the hearing and issued a written decision, called a letter of decision, which either suspended, dismissed, or declined to suspend or dismiss the employee. (St., ¶ 7). An employee may appeal the letter of decision to the System Board of Adjustment by filing a grievance. (St., ¶ 8). As discussed below, that is what occurred here.

On March 2, 2007, two first class passengers sent a letter to United CEO, Glenn Tilton, complaining about Plaintiff's conduct during a flight from O'Hare to San Antonio International Airport. The passengers stated that Ms. Perrywatson aggressively berated them for talking during a safety presentation. Retired United pilot, Richard Horton, was also sitting in the first-class cabin on the flight and witnessed the events in question, and described Ms. Perrywatson as "abusive, bullying, and humiliating." (St., ¶ 11; Ex. 4, at 1). As a result of the passengers' complaint, United issued a letter of charge against Ms. Perrywatson on April 18, 2007. (St., ¶ 12).

Under the terms of the collective bargaining agreement, United Supervisor of Onboard Service, Nancy Castro, conducted a hearing on the letter of charge to determine what, if any, action United should take against Ms. Perrywatson as a result of the incident. United, the AFA, and Ms. Perrywatson presented their positions to Ms. Castro at the hearing. Neither AFA nor Ms. Perrywatson contended that United's action was motivated by Ms. Perrywatson's prior contractual grievances, workers' compensation claims, age, or purported disability. (St., ¶ 13). After the hearing, Ms. Castro found that Ms. Perrywatson "stopp[ed] in the middle of [her] safety demonstration and singl[ed] out two . . . first class passengers in a loud and agitated state," received warranted prior discipline and suspensions, and was undependable in meeting her scheduled flight obligations. (St., ¶ 14). She issued a letter of decision on May 18, 2007, in which she explained that she had decided to terminate Ms. Perrywatson's employment for these serious performance issues. (St., ¶ 14). United formally terminated Ms. Perrywatson that day. Ms. Castro now avers that neither Ms. Perrywatson's 2004 and 2005 grievances, her workers' compensation claims, her age, nor her alleged disability entered into her decision. (St., ¶ 14, Ex. D, Castro Aff., ¶ 9).

The AFA filed a grievance over Ms. Perrywatson's dismissal by appealing Ms. Castro's letter of decision to the System Board of Adjustment. The grievance was processed along with two other grievances over prior suspensions from 2004 and 2005. Specifically, the issues before the System Board of Adjustment were: (1) whether United's amended letter of decision dated May 5, 2004, suspending the grievant for three days was without just cause; (2) whether United's letter of decision dated July 14, 2005, suspending the grievant for thirty days was without just cause; (3) whether United's letter of decision dated May 18, 2007, terminating the grievant was without just cause. (St., ¶ 16).

At the hearing, the AFA and Ms. Perrywatson contended that United did not have just cause to discharge Ms. Perrywatson for her conduct toward the first-class customers or to issue the previous suspensions against her. (St., ¶ 18; Ex A(2) at 23-24, 26). During the hearing, neither the union nor Ms. Perrywatson claimed that United terminated her employment because of her grievances, workers' compensation claims, age, or alleged disability. Rather, Ms. Perrywatson claimed that her dismissal was improper because: the first-class passengers' accounts of her actions on the flight to San Antonio were exaggerated; the passengers should not have been talking during the safety briefing; the System Board of Adjustment should take into account her frustration with the passengers' conversation during the safety briefing; she did not intend to yell or be loud toward the passengers; the passengers' complaint was an isolated incident, and she had received many commendations from passengers while she was employed by United. (St., ¶19). The System Board of Adjustment denied the grievance and upheld United's decision to terminate Ms. Perrywatson. (St., ¶ 20).

In its ruling, the Board concluded:

> that the serious onboard incident, combined with the two prior suspensions and poor record of dependability, provide the Company with just cause to discharge [Ms. Perrywatson] and this is the case notwithstanding her many years of service. It is the decision of the Board that the Company had just cause to terminate the grievant.

(St., ¶ 20; Ex. A(2) at 34). Ms. Perrywatson did not move to vacate or alter or otherwise challenge the decision. (St., ¶ 21). She filed a charge of discrimination against United with the EEOC on May 7, 2009. In it, she claimed:

> I believe that I have been discriminated against on the basis of my age (52), and on the basis of my disability, in violation of the Age Discrimination in Employment Act of 1967 and Title I of the Americans with Disabilities Act of 1990, as amended.

(St., ¶ 22; Ex. A(5)). Ms. Perrywatson's claim was dismissed for being untimely filed on May 20, 2009. (St., ¶ 22; Ex. A(6)).

# I.
# ANALYSIS

## A.
## Since Ms. Perrywatson Failed To File Her EEOC Charges In A Timely Fashion, Her ADEA And ADA Claims Are Time-Barred

In order to maintain a federal claim under the ADEA and the ADA, a plaintiff must first bring a charge before the EEOC within 300 days of the alleged unlawful employment practice. *Stepney v. Naperville Sch. Dist.,* 392 F.3d 236, 239 (7th Cir. 2004); *Flannery v. Recording Indus. Ass'n. of America,* 354 F.3d 632, 637 (7th Cir. 2004). Ms. Perrywatson was terminated on May 18, 2007, but did not file her EEOC charge until May 7, 2009, nearly two years after she was fired. Ms. Perrywatson contends that her claim did not actually accrue – and the filing period did not begin to run – until the arbitration panel upheld her termination in December 2008. (*Plaintiff's Memorandum in Opposition*, at 5-6). But the pendency of an arbitration or grievance procedure does not toll the

limitations period. *International Union of Elec., Radio and Mach. Workers, AFL-CIO, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 234-36 (1976); *Williamson v. Indiana University*, 345 F.3d 459, 463 (7th Cir. 2003); *Kelly v. City of Chicago*, 4 F.3d 509, 512 (7th Cir. 1993); *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 412 (7th Cir. 1984). The reasoning is that the contractual rights provided by an arbitration process – here, under the AFA collective bargaining agreement – are separate and quite different from the statutory rights Congress has provided through provisions like the ADEA, the ADA, or Title VII. 429 U.S. at 238. So, it is beyond debate that Ms. Perrywatson's claim against United was untimely – unless as she contends, the Supreme Court's decision in *Lewis v. City of Chicago*, 130 S.Ct. 2191 (2010) tacitly changed decades of settled precedent.

In *Lewis*, the Court held that the City, which had adopted a promotion eligibility list for firefighters based on a test score cutoff in May 1996, did not actually "use[]" an "employment practice" that "cause[d] disparate impact" until it selected candidates based on the scores some months later. 130 S.Ct. at 2198. Ms. Perrywatson likens this to her situation, where there was the possibility that her termination might be overturned in her arbitration proceeding. She reasons that United "'used' the arbitration process to reinforce the discriminatory decision that had previously been made the day she was terminated." (*Plaintiff's Memorandum in Opposition*, at 6).

But unlike *Robbins & Myers, Lewis* did not deal with an arbitration process. *Lewis* dealt with the same statutory right throughout, from the test score cut-off through the selection process. The plaintiffs there were not attempting to toll the limitations period while they pursued a different, contractual right. That is what Ms. Perrywatson is attempting to do here. More importantly, nowhere in *Lewis* did the Court so much as hint that it was overruling its precedent on grievance procedures not tolling limitations periods. In fact, *Robbins & Myers* is not even cited in *Lewis*. In any event,

lower-court judges may not deem a Supreme Court decision overruled, even if it appears inconsistent with a subsequent decision or some members of the court have expressed doubt about its continuing vitality – neither of which have occurred here. *See Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 410 (7th Cir. 2010)(Posner, J., dissenting in part). Learned Hand said it best: "Nor is it desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant; on the contrary I conceive that the measure of its duty is to divine, as best it can, what would be the event of an appeal in the case before us." *Spector Motor Serv., Inc. v. Walsh,* 139 F.2d 809, 823 (2d Cir.1943)(dissenting opinion), *rev'd., Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101 (1944).

Ms. Perrywatson's additional argument against the application of the 300-day statute of limitations is that equitable tolling should apply to excuse the late filing of her EEOC charges because she was not aware there was a 300-day filing period, she diligently pursued her rights, and there would be no prejudice to United. Equitable tolling is applied only sparingly. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). It comes into play to extend a deadline only when "despite all due diligence, a plaintiff cannot obtain the information necessary to realize that he may possibly have a claim.'" *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010)(quoting *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir.2005)). Here, Ms. Perrywatson has to demonstrate that she was prevented from filing her claim by circumstances outside her control, and that even so, she diligently pursued her claim. *Pace v. Diguglielmo*, 544 U.S.408, 418 (2005); *Tucker v. Kingston,* 538 F.3d 732, 734 (7th Cir. 2008); *Beamon*, 411 F.3d at 860-61. There is nothing in this record that remotely supports the notion that with minimal effort, Ms. Perrywatson could not

have obtained the information necessary to realize that she might have a claim. Indeed, the evidence points to the opposite conclusion.

As noted earlier, she has failed to set out any facts that support her theory of the case pursuant to Local Rule 56.1. Without any facts regarding equitable tolling in evidence, summary judgment is appropriate on the basis of her failure to file a timely charge with the EEOC. Instead of following the Local Rules – to which strict adherence is required, *Cracco*, 559 F.3d at 632; *Ciomber*, 527 F.3d at 643; *Ammons.,* 368 F.3d at 817 – Ms. Perrywatson has submitted a short affidavit on which she relies to establish that this is an appropriate case for equitable tolling. Rule 56.1 does not allow for such a substitution as was made plain in *Bay Area Business Council, Inc*. There, the summary judgment opponent failed to respond to the movant's statement of facts with a Local Rule 56.1(b) submission, choosing instead to attach an affidavit to its opposition memorandum – not unlike the course chosen by Ms. Perrywatson. *Bay Area Business Council, Inc*., 423 F.3d at 632. The district court disregarded the affidavit because it did not comply with the local rules and granted summary judgment in favor of the movant. The Seventh Circuit affirmed, holding that the district court did not have to consider the affidavit and reiterating "that rules like 56.1 provide[ ] the *only acceptable means* of disputing the other party's facts and of presenting additional facts to the district court." *Id.* at 634 (emphasis supplied)(quotations omitted). Ms. Perrywatson is entitled to no more favorable treatment.

Even if Ms. Perrywatson's affidavit were properly in evidence, it would not necessitate the application of equitable tolling. In it, she notes that she was terminated on May 18, 2007, and filed a grievance in June 2007. (Perrywatson Aff., ¶ 2). She says she was "desirous of retaining her job, and to that end," she met with her union representative/attorney, Michael Hickey, but not until February 13, 2008. (Perrywatson Aff., ¶ 3). Ms. Perrywatson says she asked Mr. Hickey if she

needed legal representation. He told her, "no," that the union would handle the arbitration. (Perrywatson Aff., ¶ 4). She also says that when she met with Mr. Hickey, she did not know that there was a 300-day statute of limitations, and he didn't mention anything about it. (Perrywatson Aff., ¶ 5). Had she known, she claims she would have filed a charge with the EEOC in time. (Perrywatson Aff., ¶ 6).

Ms. Perrywatson makes no claim that she was not aware she had a claim the day she was fired. Nor does she claim that United was in any way responsible for her delay in filing. *See Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*, 610 F.3d 382, 387 (7ᵗʰ Cir. 2010). All she claims is that she did not know there was a limitations period, and no one told her. The difficulty with this contention is that once a plaintiff knows of the injury, the limitations period begins to run even if she is ignorant of her legal rights or confused about legal process or procedure. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007); *United States v. Kubrick*, 444 U.S. 111, 122 (1979); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7ᵗʰ Cir. 2006). If the Rule were otherwise, statutes of limitations would be, in almost all cases, empty forms, and their salutary purposes, *see Owens v. Okure*, 488 U.S. 235 (1989); *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 452-453 (7th Cir. 1990), would be incapable of achievement.

Moreover, there is nothing in the affidavit to demonstrate that Ms. Perrywatson diligently pursued her rights. In fact, she doesn't even make such an argument in her brief; she makes the naked, unsupported assertion that "she has been diligent in pursuing her rights." (*Plaintiff's Memorandum in Opposition,* at 8). Such a conclusory and undeveloped argument is not, the Seventh Circuit has said time and again, to be considered. *See Judge v. Quinn*, 612 F.3d 537, 557 (7ᵗʰ Cir.

2010)("[i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel," and we have warned that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *Raghunathan v. Holder*, 604 F.3d 371, 378 (7th Cir. 2010)(argument waived where factual basis is not developed and it relies on bare conclusions); *United States v. Useni*, 516 F.3d 634, 658 (7th Cir.2008) ("We have repeatedly warned that perfunctory and undeveloped arguments . . . are waived.").

Additionally, the dates of Ms. Perrywatson's termination, her meeting with Mr. Hickey, and her filing of EEOC charges undermine any contention she was diligent.  She waited more than 280 days to meet with her union representative following her termination.  She asked him only if she needed an attorney, and nothing more about her claim.  She seems to blame Mr. Hickey for not telling her, but attorney negligence and legal mistakes are not sufficient to warrant equitable tolling. *Lawrence*, 549 U.S. at 336-337; *Munoz De Real v. Holder*, 595 F.3d 747, 749 (7th Cir. 2010); *Williams v. Sims*, 390 F.3d 958, 963 (7th Cir. 2004).  After her meeting with Mr. Hickey, it was nearly another 450 days before she finally filed charges with the EEOC.  She makes no mention of when it was that she became aware there was a limitations period, so there is no way to tell whether she was diligent in filing her EEOC charges once she learned of it.  The large chunks of time that Ms. Perrywatson allowed to pass while meeting once with her union representative and asking him only if she needed outside legal counsel – 280 days here, 450 there – do not evince any diligence on her part.

Ms. Perrywatson cites two Sixth Circuit cases for the proposition that the factors to be considered in determining whether equitable tolling applies include ignorance of the limitations

period. While cases from other circuits may be informative, they are not binding on this court and thus, cannot be the law of "[t]his circuit" as the plaintiff suggests. (*Plaintiff's Memorandum in Opposition*, at 7). "Ours is a hierarchical judiciary, and judges of inferior courts must carry out decisions" of their superiors. *Hart v. Wal-Mart Stores, Inc. Associates' Health and Welfare Plan*, 360 F.3d 674, 680 (7th Cir. 2004); *Gacy v. Welborn*, 994 F.2d 305, 311 (1993); *United States v. Watson*, 87 F.3d 927, 930 n.2 (7th Cir. 1996); *Thiel v. State Bar of Wisc.*, 94 F.3d 399, 404 (7th Cir. 1996); *Lindh v. Murphy*, 96 F.3d 856, 873 (7th Cir. 1996)(*en banc*); *Hunt v. Armour & Co.*, 185 F.2d 722 (7th Cir. 1950). Established precedent in this Circuit does not allow for ignorance of the law as an excuse for missing the filing deadline. Hence, the Sixth Circuit cases, to the extent that they recognize ignorance of the law as a factor, cannot dictate the result in this case.

But even if Sixth Circuit precedent is to be factored in, Ms. Perrywatson's position is unpersuasive. First, there is Sixth Circuit precedent indicating that ignorance of the statute of limitations is not an excuse for late filing. *See Jones v. General Motors Corp.,* 939 F.2d 380, 384 (6th Cir.1991); *Shapiro v. Cook United, Inc.,* 762 F.2d 49, 51 (6th Cir.1985); *Campbell v. Upjohn Co.,* 676 F.2d 1122, 1127 (6th Cir. 1982). Second. even if Ms. Perrywatson's affidavit were considered under the two Sixth Circuit cases on which she relies, it does not establish that she was diligent, that she had a lack of constructive notice of the filing requirement, that there was no prejudice to the defendant, or that she was reasonable in remaining ignorant of the law, as the cases require.[3] In the

---

[3] The factors enumerated in the Sixth Circuit cases are: lack of notice of the filing requirement, lack of constructive notice of the filing requirement, diligence in pursuing one's rights, absence of prejudice to the defendant, and reasonableness in remaining ignorant of the legal requirements for filing a claim. *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998); *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988).

two years between her termination and her filing of charges with the EEOC, she had one, exceedingly brief discussion with a union representative, and waited almost ten months before even doing that. This is simply not an appropriate case for the application of equitable tolling. United is entitled to summary judgment on Two.

**B.**

**Ms. Perrywatson's Wrongful Discharge Claim
Is Pre-Empted By The RLA; Her Retaliation Claims are Not**

United also argues that Ms. Perrywatson's claims for retaliatory discharge for filing grievances and her claim for wrongful discharge are "minor disputes" under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, and are not within the subject matter jurisdiction of the federal courts. The RLA – extended in 1936 to cover the airline industry – sets up a mandatory arbitral mechanism to handle disputes "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153; *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 248 (1994). Disputes concerning "rates of pay, rules or working conditions," are deemed "major" disputes. *Hawaiian Airlines*, 512 U.S. at 252. "Major disputes relate to the formation of collective [bargaining] agreements or efforts to secure them." *Id.* (internal quotations omitted). "Minor" disputes, "gro[w] out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. § 151a; 512 U.S. at 252-53. These involve "'controversies over the meaning of an existing collective bargaining agreement in a particular fact situation.'" 512 U.S. at 253 (quoting *Trainmen v. Chicago R. & I.R. Co.,* 353 U.S. 30, 33 (1957)). "Thus, 'major disputes seek to create contractual rights, minor disputes to enforce them.'" *Hawaiian Airlines*, 512 U.S. at 253 (quoting *Consolidated Rail Corporation*

15

(*"Conrail"*) *v. Railway Labor Executives Assn.,* 491 U.S. 299, 302 (1989)). Minor disputes "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." *Hawaiian Airlines*, 512 U.S. at 253.

Because Ms. Perrywatson has not presented any facts or evidence in opposition to United's motion for summary judgment, all we know about her retaliation and wrongful discharge claims come from her amended complaint. As for her wrongful discharge claim, she alleges that:

> In effecting Plaintiff's termination, Defendant United Air Lines, Inc. failed to observe its own regulations, its rules of progressive discipline, *and its contractual agreement* regarding the manner of disciplining and/or terminating an employee, and otherwise acted arbitrarily and capriciously in terminating Plaintiff. . . . the manner and means used by Defendant United Air Lines, Inc. to terminate her from her long-standing employment constituted wrongful discharge, for which it is answerable in damages.

(*Amended Complaint*, ¶¶ 30-31)(Emphasis added).

This certainly appears to be a "minor dispute" since it grew out of a grievance about the interpretation or application of the collective bargaining agreement concerning workplace rules. It certainly is *not* a dispute seeking to create contractual rights, but one to enforce them. But Ms. Perrywatson asserts that her wrongful discharge claim is not a minor dispute because it calls for proof "outside the confines" of the collective bargaining agreement. She cites, at length, from the discussion in *Hawaiian Airlines* regarding claims based on rights established by state law. (*Plaintiff's Memorandum in Opposition*, at 9-10). In *Hawaiian Airlines*, the Court noted that it had held that the RLA's mechanism for resolving "minor disputes" does not pre-empt causes of action to enforce rights that are independent of collective bargaining agreements. *Id.* at 256. The Court then went on to

specifically address state law claims for wrongful discharge, and that analysis demonstrates that Ms. Perrywatson's wrongful discharge claim is pre-empted by the RLA.

The Court began with a discussion of its holding in *Andrews v. Louisville & Nashville R. Co.,* 406 U.S. 320 (1972), in which the Court held that a state-law claim of wrongful termination was pre-empted by the RLA because the claim was firmly rooted in a breach of the collective bargaining agreement itself, not because the RLA pre-empts *all* state-law claims based on discharge or discipline. 406 U.S. at 324; *Hawaiian Airlines*, 512 U.S. at 257. The Court noted that "[t]he very concept of 'wrongful discharge' implies some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will." 406 U.S. at 324. Although styled as a wrongful discharge claim, the plaintiff in *Andrews* asserted no right that was independent of the collective bargaining agreement. 406 U.S. at 323-24. The dispute:

> turn[ed] on the extent of [the employer's] obligation to restore [the plaintiff] to his regular duties following injury in an automobile accident. The existence and extent of such an obligation in a case such as this will depend on the interpretation of the collective-bargaining agreement. Thus [the plaintiff's] claim, and [the employer's] disallowance of it, stem from differing interpretations of the collective-bargaining agreement.

406 U.S. at 324. Accordingly, the dispute in *Andrews* was pre-empted by the RLA.

The plaintiff in *Hawaiian Airlines* also asserted a wrongful discharge claim, but this one was rooted in a right created by state law: he alleged he was fired for being a "whistleblower" in violation of Hawaii's Whistleblower Protection Act when he refused to sign a maintenance record for a plane he considered unsafe. 512 U.S. at 249-50. The Court said that this particular right not to be terminated existed wholly apart from any right derived from the collective bargaining agreement. 512 U.S. at 258. Ms. Perrywatson's brief seems to suggest that her wrongful discharge claim is more like

the *Hawaiian Airlines* claim than the *Andrews* claim, but is rather secretive about why that is so. Her claim, as stated, is directed at United's "fail[ure] to observe its own regulations, its rules of progressive discipline, *and its contractual agreement* regarding the manner of disciplining and/or terminating an employee...." (*Amended Complaint*, ¶ 30)(Emphasis added). She points to no state statute like Hawaii's Whistleblower Protection Act as the source of the employment right she is attempting to vindicate. There is nothing in her claim, as stated, or her opposing brief, to suggest that her employment rights stem from anywhere but the collective bargaining agreement and United's rules (whatever those may be; we don't know because she failed to submit any facts or evidence under Local Rule 56.1).[4] Accordingly, Ms. Perrywatson's wrongful discharge claim is pre-empted by the RLA. United is entitled to summary judgment on Count Three.

In her retaliation claim, Ms. Perrywatson alleges that her termination was in retaliation for the grievances she filed in 2004 and 2005, which she claims were in response to disciplinary actions for an unauthorized absence and something to do with hotel charges – presumably expensing hotel charges to United. (*Amended Complaint*, at ¶¶ 10-11, 20). The grievances themselves were obviously "minor" disputes, the resolution of which would be dependent upon interpretation of the collective bargaining agreement, and Ms. Perrywatson does not suggest otherwise. The question, however, is whether the retaliation claim is a minor dispute.

The parties' briefs pay scant attention to this issue. The Amended Complaint offers no inkling as to what law Ms. Perrywatson thinks supports her claim. Citing to no federal or state statute, her response brief simply asserts that resolution of the claim requires proof outside the confines of the

---

[4] Ms. Perrywatson adverts, in passing, to her ADA claim, presumably as an independent source of a right, but that claim is time-barred. Morever, as her wrongful discharge claim is pled, it is a separate claim having nothing to do with her ADA claim.

collective bargaining agreement. (*Plaintiff's Memorandum in Opposition*, at 10). But this sort of conclusory statement in a brief is not enough. *See Clifford v. Crop Production Services, Inc.*, _F.3d_, 2010 WL 4812817 n.6 (7th Cir. 2010).[5] United focuses on the fact that the claim is about retaliating for filing *grievances* and reasons that it must arise out of grievances under the collective bargaining agreement, making it a minor dispute. (*United's Memorandum of Law*, at 6). But merely because the grievances, themselves, addressed employment rights derived from the collective bargaining agreement does not mean that a retaliatory firing for filing those grievances does as well. The employment right she hopes to vindicate would seemingly derive from some unnamed statute or regulation – Ms. Perrywatson's claim is so vague that it is a mystery what that might be – and not from the collective bargaining agreement.

Consider the other portion of Ms. Perrywatson's retaliation claim, which surprisingly deals with retaliation for all the Illinois Workers' Compensation claims she ever filed. (*Amended Complaint*, ¶ 20).[6] It alleges that she suffered injuries to her knees in 2000 and 2004, and that she filed workers' compensation claims for these injuries – although she does not say when, although that fact may have evidentiary significance, either for or against the plaintiff. (*Amended Complaint*, ¶¶

---

[5] *See also IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.,* 437 F.3d 606, 610-611 (7th Cir.2006); *United States ex rel. Feingold v. AdminaStar Federal, Inc.,* 324 F.3d 492, 494, 497 (7th Cir.2003); *Car Carriers Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984). *Cf. In re: Payne,* 431 F.3d 1055, 1060 (7th Cir.2005)(unsubstantiated assertion at oral argument given no weight).

[6] "Surprisingly," because her Amended Complaint is the first mention of this. She did not even allude to this claim throughout the arbitration process – at least the past grievance were *part* of the arbitration process, although not as the subject of a retaliation claim – in her initial complaint or in her responses to the defendants' motions to dismiss that complaint. Ms. Perrywatson's approach to the case is somewhat cryptic. In her initial complaint – dismissed for failing to adequately state a claim under *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937 (2009) -- among other things, she claimed age discrimination without saying how old she was, and she alleged discrimination on account of her "disability," without any mention of what that might have been.

4, 5, 7). But the chronology is not mentioned and so we move on. Ms. Perrywatson adds that she filed an additional claim regarding her right knee in February 2007. (*Amended Complaint*, ¶ 8). Although Ms. Perrywatson does not so much as allude to it, Illinois does have a statue that makes retaliation for pursuing a workers' compensation claim a tort. *Casanova v. American Airlines, Inc.*, 616 F.3d 695, 695 (7th Cir. 2010); *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 299 (7th Cir. 2010). Under 820 ILCS 305/4:

> It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by [the Workers' Compensation Act] or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by [the Workers' Compensation Act].

820 ILCS 305/4(h).

To make out a claim for retaliatory discharge, a plaintiff must show: (1) that she was the defendant's employee before the injury; (2) that she exercised a right granted by the Workers' Compensation Act; (3) and that the discharge was causally connected to filing a workers' compensation claim. *Grabs v. Safeway, Inc.*, 395 Ill.App.3d 286, 291, 917 N.E.2d 122, 126 (1st Dist. 2009); *Dotson v. BRP U.S. Inc.*, 512 F.3d 703, 707 (7th Cir. 2008). The element of causation is not met if the employer has a valid, nonpretextual basis for discharging the employee. *Grabs*, 395 Ill.App.3d at 291, 917 N.E.2d at 126; *Dotson*, 512 F.3d at 707. The source of the employment right at issue is outside the collective bargaining agreement, and United, does not suggest otherwise.

So, too, it would seem, whatever statute or law Ms. Perrywatson hopes to rely upon for her grievance-based retaliation claim, the right to be free from retaliation for filing grievances would come from outside the collective bargaining agreement. In *Lingle v. Norge Div. of Magic Chef, Inc.*,

486 U.S. 399, 407 (1988), the Supreme Court determined that a state-law retaliatory discharge claim

was not pre-empted by the Labor Management Relations Act.  The analysis is similar to the analysis

that must be undertaken under the RLA.  As the Court noted, to resolve the claim, a court would have

to determine whether the employee was discharged and what the employer's motive in doing so was.

The Court then explained:

> Each of these purely factual questions pertains to the conduct of the employee and the
> conduct and motivation of the employer. Neither of the elements requires a court to
> interpret any term of a collective-bargaining agreement. To defend against a retaliatory
> discharge claim, an employer must show that it had a nonretaliatory reason for the
> discharge, . . . this purely factual inquiry likewise does not turn on the meaning of any
> provision of a collective-bargaining agreement. Thus, the state-law remedy in this case
> is "independent" of the collective-bargaining agreement in the sense of "independent"
> that matters for § 301 pre-emption purposes: resolution of the state-law claim does not
> require construing the collective-bargaining agreement.

486 U.S. at 407.  Whatever the source of Ms. Perrywatson's claim, the same holds true here.  Based

on the present record, it cannot be concluded either that  the grievance-based retaliation claim or the

workers' compensation based claim is pre-empted by the RLA.

### C.

**The Workers' Compensation Retaliation Claim And The Grievance Retaliation Claim**

A threshold issue that must be first considered in connection with United's request for

summary judgment on the state law based claims is whether the dismissal of the federal claims

precludes a court from ruling on United's motion as it relates to the non-federal claims.  Although the

answer to the question has been assumed by the parties, "[i]nsuring the existence of subject-matter

jurisdiction is the court's first duty in every lawsuit." *McCready v. White*, 417 F.3d 700, 702 (7th Cir.

2005); *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006).  "Where [as here,]  a

district court has original jurisdiction over some claims... it has supplemental jurisdiction 'over all

other claims that are so related to claims within such original jurisdiction that they form part of the same case or controversy, 28 U.S.C. 1367(a), and that supplemental jurisdiction persists even if all the claims giving rise to original jurisdiction have been dismissed...." *Miller v. Herman,* 600 F.3d 726, 738 (7th Cir. 2010).

Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. *Id.; Leister v. Dovetail, Inc.,* 546 F.3d 875, 882 (7th Cir.2008) (characterizing this principle as a presumption). But a district court is never required to relinquish jurisdiction over state law claims merely because the federal claims were dismissed before trial. As the plain language of §1367(c) reflects – "The district courts *may* decline to exercise supplemental jurisdiction" – the decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary. *Carlsbad Technology, Inc. v. HIF Bio, Inc.,* _U.S._, 129 S.Ct. 1862, 1866 (2009); *Miller*, 600 F3d at 738. The only requirement is that there be a considered determination by the court of whether it should hear the claim. *See Miller*, 600 F3d at 738.[7]

It is only when a claim falls outside the supplemental jurisdiction that dismissal is required, unless the plaintiff can point to an independent basis of jurisdiction. *Muscarello v. Ogle County Bd. of Com'rs,* 610 F.3d 416, 426 (7th Cir. 2010).

---

[7] Discretion denotes the absence of a hard and fast rule. *Langnes v. Green,* 282 U.S. 531, 541 (1931); *Rogers v. Loether,* 467 F.2d 1110, 1111-12 (7th Cir.1972)(Stevens, J.). Thus, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *United States. v. Banks,* 546 F.3d 507, 508 (7th Cir. 2008). *Cf. United States v. Bullion,* 466 F.3d 574, 577 (7th Cir.2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). An abuse of discretion occurs when no reasonable person could agree with the district court's decision. *United States v. Harris,* 531 F.3d 507, 514 (7th Cir.2008); *Roadway Exp., Inc. v. U.S. Dept. of Labor,* 495 F.3d 477, 484-485 (7th Cir.2007); *United States v. Jefferson,* 252 F.3d 937, 940 (7th Cir.2001).

Ms. Perrywatson's claim that she was fired not for misbehavior but for filing workers' compensation applications is a claim within the court's supplemental jurisdiction, and there is no reason not to decide it now and every reason to do so. Indeed to do otherwise would be an arguable abuse of discretion, for substantial judicial resources have already been committed and sending the case to another court would impose unnecessary burdens not only on the parties, but on the state courts, which would be required to rehear a claim that Ms. Perrywatson has had the unrestricted opportunity to present here. Additionally, it is absolutely clear how the claim should be decided. Hence, I decline to dismiss the claim under §1637. *See Sharp Electronics Corp. v. Metropolitan Life Insurance. Co.*, 578 F.3d 505, 515 (7th Cir.2009).

### 1.
### Ms. Perrywatson Has Failed To Raise A Genuine Issue Of Fact
### As To Her Workers' Compensation Retaliatory Discharge Claim

United argues that it is entitled to summary judgment on Ms. Perrywatson's workers'-compensation-retaliation claim because, based on the undisputed facts, no reasonable jury could find that it fired Ms. Perrywatson for filing workers' compensation claims in 2004, 2005, and 2007. Since Ms. Perrywatson has the burden of proving the elements of her claim, she must prove that her filing of workers' compensation claims was the reason she was fired and that there is a disputed issue of material fact on that score. *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 300 (7th Cir. 2010); *Grabs v. Safeway, Inc.*, 395 Ill.App.3d 286, 291, 917 N.E.2d 122, 126 (1st Dist. 2009); *Dotson v. BRP U.S. Inc.*, 512 F.3d 703, 707 (7th Cir. 2008). But she does not dispute any of United's factual assertions or other evidence that she was fired for disciplinary reasons. As already noted, Ms. Perrywatson did not file a Local Rule 56.1 statement, or respond to United's Rule 56.1(a) Statement of Facts. Consequently, she has conceded United's version of the events. When an employer presents a lawful

reason for having fired an employee – as United has here – and the plaintiff leaves that reason unrebutted, she cannot stave off a motion for summary judgment. *Gacek*, 614 F.3d at 300.

Ms. Perrywatson's answering brief points out that United was in receipt of her workers' compensation claim on February 27, 2007, received the customers' complaint letter on March 2nd, and fried her on May 18th. She argues that "[t]he coincidence of having received another workers' compensation claim... on February 27, 2007, and then three days later receiving a customer complaint from a first class passenger puts in doubt United's motives to terminate her on May 18, 2007" (*Plaintiff Memorandum in Opposition*, at 11). While suspicious timing can be a factor in any case, "[a] claim that rests entirely on suspicious timing is insufficient to survive summary judgment." *Feldman v. American Memorial Life Insurance. Co.*, 196 F.3d 783, 792 (7th Cir. 1999). *See also Amrhein v. Health Care Serv. Corp.,* 546 F.3d 854, 859 (7th Cir.2008); *Springer v. Durflinger*, 518 F.3d 479.484 (7th Cir. 2008); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734, 737 (7th Cir. 2008); *Moser v. Ind. Dept. of Corr.,* 406 F.3d 895, 905 (7th Cir.2005); *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir.2002).

As she did in connection with the timeliness of her EEOC charge, Ms. Perrywatson also violates Local Rule 56.1 in connection with her retaliation claim by withholding what she contends is the supporting evidence until her opposing brief. This evidence need not be considered since it was not properly submitted by way of a Local Rule 56.1(b) statement. *Bay Area Business Council*, 423 F.3d at 633. But even if it were, it would not advance Ms. Perrywatson's claim against United for allegedly having fired her because she submitted workers' compensation claims

The evidence consists of three December 2005 articles or memos from the AFA's "United Master Executive Council." The first, dated December 9, 2005, refers to a letter from United to

flight attendants stating that "[h]istorically employee absences have hindered our ability to deliver the service we strive to achieve." (Pl. Ex. 1, at 1). The article calls this "a thinly veiled attempt to harass and intimidate Flight Attendants who may have been ill, injured or pregnant over the Holidays." (Pl. Ex. 1, at 1). The second, dated December 7, 2005, refers to an email the Labor Relations group from United's Onboard Services mistakenly sent to flight attendants instead of supervisors that supposedly touted the issuance of 400 letters of charge with two weeks left in the year. (Pl. Ex. 2, at 1). The email itself is not included, and the only purportedly quoted portions are "milestone" and "two more weeks before the year is over." (Pl. Ex. 2, at 1). The article said the email exposed United's subjective disciplinary process. (Pl. Ex. 2, at 1). The third article accused United of targeting flight attendants who are sick or injured. (Pl. Ex. 3, at 1). It stated that "[i]f we are sick more often today, than we were in the past, it is a direct result of working harder and longer." (Pl. Ex. 3, at 1).

The articles are merely the unsworn and conclusory accusations of their authors that United was overzealous in policing of sick leave. Like statements in a newspaper article offered to prove the truth of the matter asserted, they are hearsay, *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), and hearsay is inadmissible in summary judgment proceedings to the same extent it is inadmissible in a trial. *Tindle v. Pulte Home Corp.*, 607 F.3d 494, 497 (7th Cir.2010); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).[8] More importantly, even if the hearsay rule were to

---

[8] Hearsay is an out-of-court "statement" other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted. Rule 801, Federal Rules of Evidence. Where, as here, the out-of-court statement is offered to prove that what the statement asserts is true, the party against whom the statement is offered must have an opportunity to cross-examine the person who made the statement. If, however, the significance of the statement lies solely in the fact that it was made no issue is raised as to the truthfulness of what was said, and the credibility of the declarant is irrelevant. *See e.g.,*
(continued...)

be ignored, the articles do not begin to prove that United retaliated against the plaintiff *for having filed worker's compensation claims*, as she alleges. That United was cracking down on sick leave in December 2005 does not raise an issue of fact regarding United's evidence that it fired Ms. Perrywatson for being rude and disrespectful to passengers in May 2007.

At bottom, all that Ms. Perrywatson has to support her conclusions are speculation and hypothesis. But, "hypothesis is not proof," *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir. 2005)(Posner, J.), and speculation can never be an adequate substitute for proof. *United States v. Landry,* 257 F.2d 425,431 (7th Cir.1958). *Accord In re Cohen,* 507 F.3d 610, 614 (7th Cir.2007) (speculation is not evidence); *United States v. Holland,* 445 F.2d 701, 793 (D.C.Cir.1971)("The trouble with absence of evidence is that it is consistent with *any* hypothesis.")(Emphasis in original). Her arguments are ultimately nothing more than a form of *post hoc ergo propter hoc*, which is not an argument but the name for a logical fallacy – an inadequate reason to infer causation. *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007); *Bermudez v. TRC Holdings Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998).

**2.**
**The Grievance-Based Retaliatory Discharge Claim**

Consistent with Local Rule 56.1's requirement that a party seeking summary judgment include with its motion "a statement of material facts as to which the ... party contends there is no

---

[8](...continued)
*Associated Randall Bank v. Griffin, Kubik, Stephens & Thompson, Inc*. 3 F.3d 208 (7th Cir.1993)(statements in newspaper article admissible because not offered for their truth). Cross-examination is then only needed to explore the credibility of the witness who testifies about the existence of the statement, and not the declarant. *Williamson v. United States*, 512 U.S. 594, 598 (1994); *United States v. Montana,* 199 F.3d 947, 950 (7th Cir.1999). The three articles in the instant case are offered for the truth of what they assert and thus are plainly barred by the hearsay rule. They are irrelevant for any other purpose.

genuine issue and that entitle the ... party to a judgment as a matter of law,"United's summary judgment brief is quite detailed in arguing that there is no issue of material fact in connection with Ms. Perrywatson having been fired for filing workers' compensation claims.  By contrast, its eleven page Memorandum makes no factual arguments  regarding her contention that she was also fired for having fired grievances, focusing instead on the legal question of preemption.(United's Memorandum of Law in Support of its Motion for Summary Judgment  (#72)). Ms. Castro has sworn that neither Ms. Perrywatson's 2004 and 2005 grievances, her workers' compensation claims, her age, nor her alleged disability entered into her decision to fire Ms. Perrywatson.  (St., ¶ 14, Ex. D, Castro Aff., ¶ 9).  But, it is not for a court to make arguments for a party or to go beyond the briefs,  *See Kay v. Board of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008); *Thakore v. Universal Mach. Co. of Pottstown, Inc.,* 670 F.Supp.2d 705, 717 (N.D.Ill. 2009)(collecting cases). *See also United States v. International Business Machines Corp.,* 517 U.S. 843, 855 (1996).  Hence, the motion for summary judgment as to this claim is denied.

The fact remains that substantial judicial resources have already been committed to the case and this claim and its attendant circumstances. As wit the workers' compensation claim, sending the case to another court would  impose unnecessary burdens not only on the parties, but on the state courts, which would be required needlessly to rehear the claim.  Hence, I decline to dismiss the claim under §1637.  However, even if I thought it an appropriate exercise of discretion to dismiss this claim under §1367(c)(3), one additional factor would still have to be considered.

### 3.

As discussed above, generally, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining state claims. *Porter v. Suliene*, 2010

WL 3377598, *3 (7th Cir. 2010); *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.,* 593 F.3d 507, 513 (7th Cir.2010). *See also*, *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 810 n.6 (1986). But, the Seventh Circuit has also stressed that the "'court's discretion to dismiss for lack of subject matter jurisdiction when the plaintiff could have pleaded the existence of jurisdiction and when in fact such jurisdiction exists, should be exercised sparingly.'" *Muscarello v. Ogle County Bd. of Com'rs*, 610 F.3d 416, 425 - 26 (7th Cir. 2010).

In *Muscarello*, the district court elected to dismiss seven claims for which Muscarello pleaded supplemental jurisdiction pursuant to 28 U.S.C. § 1367. That action was authorized by § 1367(c)(3), and the court saw no "no abuse of discretion in that action, as far as it goes." 610 F.3d at 425. The only question was whether, since diversity might provide an alternative basis of subject-matter jurisdiction, the court should have retained the counts on that basis. Muscarello never asked it to do so, however, and so the question was should the court have investigated other potential grounds for its jurisdiction that were not asserted. *Id*.

The court began its analysis with the basic principle that the burden of establishing subject-matter jurisdiction rests on the party asserting it and that jurisdiction may not be sustained on a theory that the plaintiff has not advanced. But that having been said, the court noted that the rule in this circuit has been that the "'court's discretion to dismiss for lack of subject matter jurisdiction when the plaintiff could have pleaded the existence of jurisdiction and when in fact such jurisdiction exists, should be exercised sparingly.'" *Id.* The court noted that it was at least theoretically possible that some or all of the plaintiff's theories do not "form part of the same case or controversy under Article III of the United States Constitution," as required by § 1367(a), and thus could be pursued only if diversity or alienage jurisdiction is present. *Id*. 426. But, the court concluded, to say that dismissals

in cases where independent jurisdiction may be present should be rare does not mean that this step is never appropriate. See, *e.g., Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 849 F.2d 1197 (9th Cir. 1988) (remanding the case with instructions to dismiss for lack of jurisdiction, and expressly declining to determine whether jurisdiction existed under § 1332 because the parties did not plead it). The court then emphasized that "'the ultimate duty of pleading his case rests upon the party and not upon the district court to divine what is not reasonably there,'"and that just as the plaintiff is the absolute master of what jurisdiction she will appeal to, she also is the absolute master of what jurisdiction she will eschew. *Id*. at 426.

Where does this leave us? In *Muscarello,* the district court gave the plaintiff several chances to invoke diversity jurisdiction; Ms. Perrywatson has had none. And while the Amended Complaint contains no allegations that would support diversity jurisdiction, other documents that are part of the record – although not part of the summary judgment record – indicate that Ms. Perrywatson resides in Ohio, and that she originally filed this case in the Northern District of Ohio.[Dkt.# 7 at 2].[9] United has conceded in previous filings that its principal place of business is Chicago. [Dkt.# 13, at 2]. The AFA's prior filings suggest it is headquartered in Rosemont, Illinois. [Dkt. # 11-2, at 9-10].[10] And, it cannot be said on this record that Ms. Perywatson's damages would not exceed the jurisdictional minimum of $75,000 given her request for compensatory damages, back pay and front pay and damages for emotional suffering. *See Andrews v. E.I. Du Pont De Nemours and Co.*, 447 F.3d 510, 515 (7th Cir. 2006)(noting that, despite a lower figured quoted in complaint, damages would likely

---

[9] While residency is not the same as domicile, it is not without significance. *Ner Tamid Congregation of North Town v. Krivoruchko,* 620 F.Supp.2d 924, 927 (N.D.Ill.2009).

[10] A court can take judicial notice of its own records. *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 157 (1969); *Freshman v. Atkins*, 269 U.S. 121 (1925).

exceed $75,000). There is enough then from which it can be concluded that diversity jurisdiction may exist. Thus, even if I were inclined to dismiss the claim, Ms. Perrywatson ought be given the opportunity to file a Second Amended Complaint with appropriate allegations on which diversity jurisdiction can be based.

## CONCLUSION

For the foregoing reasons, United's motion for summary judgment [# 70] is GRANTED in part, and DENIED in part.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 1/10/11