**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SLIMMARIE PERRYWATSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 10 C 0639** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **UNITED AIRLINES, INC., *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Slimmarie Perrywatson was a flight attendant with United Airlines from 1978 until she was fired on May 18, 2007 for her conduct towards passengers on a United flight on which she was working. She appealed her termination, along with earlier disciplinary actions, through her union – the Association of Flight Attendants ("AFA") – before an arbitration panel. The hearing process concluded on August 6, 2008, and the panel upheld the termination and disciplinary charges on December 26, 2008. She filed discrimination charges with the Equal Employment Opportunity Commission on May 7, 2009. About two weeks later, her charges were dismissed as untimely and she received a right-to-sue-letter. Ms.Perrywatson then filed suit in the Northern District of Ohio on August 19, 2009, charging United Airlines with discrimination under Title VII (a claim she later dropped), age discrimination under the Age Discrimination in Employment Act ("ADEA"), disability discrimination under the Americans With Disabilities Act ("ADA"), wrongful discharge, and retaliation. She also charged the AFA with having denied her fair representation, with withholding evidence to support her grievance of United's firing, and with refusing to call witnesses on her behalf and engaging in excessive delays. (*Complaint*, ¶¶ 7-8)(Dkt #1). Count IV of the Complaint charged the AFA with age and disability discrimination as a consequence of its alleged

failure to have fairly represented the plaintiff. (¶¶19-22). Her case was transferred to this court, and

the parties consented to jurisdiction before a magistrate judge pursuant to 28 U.S.C. §636(b)(1)(C).

Following the dismissal of the Complaint, *Perrywatson v. United Airlines*, 2010 WL

2169489 (N.D.Ill. 2010), the Complaint went though three more iterations. (*See* Dkt. ##62, 86, 91

and 99)[1] The AFA's Motions to Dismiss were also granted. *See Perrywatson v. United Airlines*,

2010 WL 5256374 (N.D.Ill. 2010); *Perrywatson v. United Airlines, Inc*., 2011 WL 2470103, 1

(N.D.Ill.2011)("The plaintiff's pleading continues to be a model of uncertainty and unfocused

allegations. It is her contention that in addition to a lack of 'fair representation,'there was 'active

discrimination committed by the union....' (*Reply* at 7). It was as a consequence of these misdeeds,

says the plaintiff, that she lost her job, apparently by not prevailing at the arbitration as she ought

to have."). Thereafter, United filed a largely successful motion for summary judgment. *See*

*Perrywatson v. United Airlines*, 762 F.Supp.2d 1107 (N.D.Ill. 2011). With most of her case against

United gutted, Ms. Perrywatson dismissed the airline as a defendant on 2/11/11. (Dkt. #93).

Accordingly, with the approval of the plaintiff, whatever claims were left following the grant of

partial summary judgment were dismissed and judgment was entered in favor of United dismissing

the case with prejudice. (Dkt. #94).

The AFA has now moved for summary judgment on the Third Amended Complaint.

---

[1] There was an Amended Complaint, a Second Amended Complaint, and two Third Amended Complaints. The initial Third Amended Complaint, (Dkt. #91), was dismissed because it was not signed in violation of Rule 11(a), Federal Rules of Civil Procedure. The Motion to Dismiss, insofar as it was based on Rule 12(b)(6), was denied. *Perrywatson v. United Airlines*, 2011 WL 2470103 (N.D.Ill. 2011). A second "Third Amended Complaint" was filed (Dkt. #99), and it is to that Complaint that the Motion for Summary Judgment is addressed.

# I.
# BACKGROUND

## A.
## The Third Amended Complaint

The one-count Third Amended Complaint purports to charge the AFA with "disability and age discrimination." (Dkt. #99, ¶¶22-28).[2]  It alleges that at least since 2000, Plaintiff has "suffered from a disability, specifically affecting her ability to work, and consisting of torn lateral meniscus of her right and left knees and chondromalcia [*sic*] patellae of both knees."  It is alleged that this disability continued until she was fired by United Airlines on May 18, 2007 for misconduct directed against passengers on a United flight.  The complaint does not give her age.

The Third Amended Complaint alleges that the AFA representative at the union-sponsored mediation following plaintiff's firing "refused to introduce these issues at her arbitration." (¶14).  Ms. Perrywatson alleges that during the arbitration process, the AFA allowed all grievances to go forward even though the 2004 and 2005 disciplinary matters against the plaintiff had violated United's progressive discipline rules, as well as the collective bargaining agreement between it and United.  Ms. Perrywatson also alleges that the AFA mishandled her case, violated its contract with her, withheld dated and documented evidence to support her grievances, refused to call witnesses, and engaged in excessive delays. (¶23).  It is further alleged that the AFA, despite knowledge that plaintiff experienced and suffered from medical issues that limited her job performance and may have been the cause of her termination by United, failed to advance any such arguments in her behalf "in reckless disregard of the truth of such matters." (¶24).

---

[2] The AFA had moved to strike what it termed "objectionable statements" from plaintiff's summary judgment submissions. That motion was denied. *Perrywatson v. Association of Flight Attendants-CWA, AFL-CIO*, 2012 WL 3150574 (N.D.Ill. 2012).

It is further alleged that the AFA's acts and/or omissions constituted acts of age and disability discrimination against plaintiff and that although the AFA knew that the charges against her by United "were mere pretexts to terminate her on account of her age and disability" (¶25), the AFA nonetheless failed to have argued at the arbitration that the real reason for plaintiff's termination was discrimination on account of age and disability. (¶27). There is no specific allegation in the Third Amended Complaint or any of its predecessors that the *AFA's* conduct was prompted by plaintiff's age or purported disability or that the outcome of the arbitration would probably have been different had Ms. Perrywatson's strategy been followed. [3]

The closest the Third Amended Complaint comes to such an explicit charge is the allegation that the AFA committed additional acts of age and disability discrimination at the arbitration process "by not treating her as others similarly situated, that is, others of her age and disability."(¶26). But that is an odd and potentially self-defeating contention, since an inference of age or disability discrimination would only arise if the AFA had treated Ms. Perrywatson differently than *younger* employees and those *without a disability*. Treating her differently (i.e. less fairly or favorably) than others of her age and/or with a disability would preclude the inference sought to be drawn from the disparate treatment and would warrant the inference that she was fired for reasons *unrelated* to age or disability.

---

[3]In denying the AFA's Rule 12(b)(6) motion to dismiss, it was noted that the plaintiff "ascribes, although somewhat awkwardly, a discriminatory motive for these failings. In essence, it is her contention that the union essentially blew off her defense because of her age and supposed disability." *Perrywatson,* 2011 WL 2470103, 1 (N.D.Ill.2011). An earlier Opinion held that Ms. Perrywatson had alleged, just barely, that there was a discriminatory animus toward by the AFA due to her age and supposed disability. *Perrywatson*, 2010 WL 5256374, 3.

4

In any event, " unfortunately for [Ms. Perrywatson], saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it [is] not the district court's job to sift through the record and make [plaintiff's] case for h[er]." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). Ms. Perrywatson's submission does not begin to raise a genuine issue of material fact, and the AFA's Motion for Summary Judgment must be granted.

**B.**
**Summary Judgment Under Rule 56**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it is critical to the determination of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Spivey v. Adaptive Marketing LLC,* 622 F.3d 816, 822 (7th Cir.2010). A genuine issue of material fact exists, precluding summary judgment, if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

Once a properly supported motion for summary judgment is made, the opposing party must respond by setting forth specific facts showing that there is a genuine factual issue for trial. *Anderson,* 477 U.S. at 255. In considering a motion for summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999). But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a

5

whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue' for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986).

Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules of Civil Procedure as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp.,*477 U.S. at 327-328. [4] As the Supreme Court stressed in *Celotex Corp,* Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis. 477 U.S. at 327-328. The AFA has done precisely that.

## C.

## Summary Judgment Under Local Rule 56.1

As always, the facts underlying this summary judgment proceeding are drawn from the parties' Local Rule 56.1 submissions. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc*., 686 F.3d 394, 398 (7th Cir. 2012). The party opposing summary judgment must respond to the movant's statement of proposed material facts, and that response must contain both "a response to each numbered paragraph in the moving party's

---

[4] In *Celotex Corp.,* the Court noted that before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. But with the advent of "notice pleading," the motion to dismiss seldom fulfilled this function, and its place was taken by the motion for summary judgment. But this may no be quite true anymore given *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

statement," Local Rule 56.1(b)(3)(B), and a separate statement "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." Local Rule 56.1(b)(3)(C); *Sojka*, 686 F.3d at 398; *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008). Each response, and each asserted fact, must be supported with a reference to the record. Local Rule 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). The district court is entitled to expect strict compliance with the rule. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 883-884 (7th Cir.2012); *Shaffer v. American Medical Ass'n*, 662 F.3d 439, 442 (7th Cir. 2011); *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 654 (7th Cir. 2011). Responses and facts that are not set out and appropriately supported in an opponent's Rule 56.1 response will not be considered, *see Shaffer*, 662 F.3d at 442); *Bay Area Business Council*, 423 F.3d at 633 (court properly disregarded affidavits not referenced in 56.1 submission), and the movant's version of the facts – if compliant with the rule – will be deemed admitted. Local Rule 56.1(b)(3)(C); *Rao v. BP Products North America, Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008); *Cracco*, 559 F.3d at 632. This is not Ms. Perrywatson's first brush with the Local Rule.

Earlier in this case, United moved for summary judgment on her claims, and she failed to file a Rule 56.1 response to United's Rule 56.1 statement of facts. (Dkt. #84, at 4). She lost on nearly every facet of United's motion, and only a shred of her complaint against her former employer was left. *Perrywatson,* 726 F.Supp.2d 1107. (Dkt. #84). She then dropped that shred, and United was out of the case. (Dkt. #93). Thus, quite apart from being charged with knowledge of the requirements of Local Rule 56.1, Ms. Perrywatson's prior submissions in opposition to United's

Motion for Summary Judgment and the court's opinion dealing with the Rule certainly alerted Ms. Perrywatson to what she had to do in responding to the AFA's summary judgment submission.

Yet, her submission in response to that Motion for Summary Judgment continues to be noncompliant with Local Rule 56.1. In her Rule 56.1 statement, Ms. Perrywatson has asserted just two facts she claims require denial of the AFA's motion. (Dkt. #122-2, *Plaintiff's Statement of Material Facts*). Yet, in her memorandum, she asserts nearly *seven pages* of supposed facts that are not found in her Rule 56.1 statement, the defendant's statement, or her response to it. (Dkt. #122, *Plaintiff's Memorandum of Law in Opposition*, at 4-10). As the preceding discussion and pertinent Seventh Circuit authority make clear, these "facts" need not, and will not, be considered. *Shaffer*, 662 F.3d at 442; *Bay Area Business Council*, 423 F.3d at 633. Moreover, virtually all of these facts are said to be drawn from Ms. Perrywatson's affidavit, which she attached to her memorandum. (*Plaintiff's Memorandum of Law in Opposition*, at 4). That affidavit is not mentioned in either Ms. Perrywatson's response to the defendant's Rule 56.1 submission or her own statement of facts under the rule. As a result, those "facts" play no role in this proceeding. *See Bay Area*, 423 F.3d at 633 (court could disregard affidavit that failed to comply with Local Rule 56.1).

The few remaining facts mentioned in Ms. Perrywatson's memorandum come from the deposition testimony of Michael Hickey, the union attorney who attended the arbitration hearing with her. (*Plaintiff's Memorandum of Law in Opposition*, at 8-10). Again, these facts are not set forth in Ms. Perrywatson's Local Rule 56.1 submissions, so they will not be considered. Even if they were, however, Ms. Perrywatson's efforts would fall short. Indeed, the Hickey evidence undercuts rather than supports Ms. Perrywatson's arguments.

8

Ms. Perrywatson claims that Mr. Hickey "indicated" that he hadn't represented her at the hearing, but rather had represented the Union. (*Plaintiff's Memorandum of Law in Opposition*, at 9, citing *Hickey Dep*., at 54). But, Ms. Perrywatson does not include the page of the transcript she cites to. She cites page 54; her excerpts begin at page 66. (Dkt. #122-4, at 1).[5] Ms. Perrywatson also asserts that there was "overwhelming evidence that [she] had a disability," but that Mr. Hickey said there was no evidence. (*Plaintiff's Memorandum of Law in Opposition*, at 9, citing *Hickey Dep*., at 129-130). One wonders what this overwhelming evidence might have been. It surely is nowhere to be found in the record.[6]

Mr. Hickey testified that he had considered whether United's "action was pretextual in trying to terminate Ms. Perrywatson and whether the charges against her were just a ruse for the underlying motive of the company to terminate her for age and disability reasons." (*Hickey Dep*. at 129). He said that he had "found no evidence or anything that would indicate that direction":

> I know that's what – I believe that's what Ms. Perrywatson believed, but there was no – she couldn't give us any evidence of it, and I was unable to see anything in the record that would suggest that it was in any way pretextual.
>
> \*          \*          \*
>
> I spoke to the local union people that were involved in processing the grievances locally and asked if they had – if there was anything that they were aware of that

---

[5] The page also does not appear in the excerpts the defendant submitted, but putting it in the record was certainly not up to the defendant.

[6] Mr. Hickey had reviewed her medical records and was unable to conclude that there was evidentiary support of a disability. (*Hickey Dep*. at 131). The single piece of evidence relating to her medical condition that Ms. Perrywatson has submitted in these proceedings is a 2008 MRI that indicates she suffers from deterioration of her meniscus in her right knee (chondromalacia patellae), but that there is no evidence of a tear to her meniscus. (*Plaintiff's Statement of Material Facts*, ¶ 1; Attached Ex.). Yet, her claim in her most recent complaint is that she has *tears to both* her right and left menisci. (*Third Amended Complaint*, ¶ 12). Other evidence submitted by the defendant does reflect that years earlier Ms. Perrywatson had torn both menisci but both were surgically repaired successfully. It is thus not accurate to say that she "has" tears. And there is not a shred of evidence that a surgically repaired tear to a meniscus constitutes a disability within the meaning of the ADA. The single piece of evidence that she offers belies her claim as to her right knee and says nothing about her left knee.

would suggest that the company's conduct toward her was in any way discriminatory.

Q: All right. So you pursued it?

A: Yes. To see whether or not there was any connection between the discipline that was issued against her and some discriminatory or improper motive, but I didn't find anything.

(*Hickey Dep.*, at 131).

Finally, Ms. Perrywatson asserts that, while Mr. Hickey didn't think disability discrimination was germane to the arbitration proceeding, he had no problem arguing that United's motive was racial discrimination and could give no reason why he decided to argue that but not disability discrimination. (*Plaintiff's Memorandum of Law in Opposition*, at 9, citing *Hickey Dep.*, at 129-130). This contention distorts what Mr. Hickey actually said. While Mr. Hickey allowed that he raised racial discrimination at the hearing, he explained, at some length, that he was referring to the animus of the passengers who filed a complaint against Ms. Perrywatson, not that of United:

Q: And so, obviously, you considered that that might have formed a pretext or there might have been some pretextual activity going on at the company that they really terminated her because of her race?

A: Not exactly. My argument was I was trying to suggest to the arbitrator that based on the demeanor of the passenger witnesses and the fact that they were older Caucasian males and Ms. Perrywatson was an African-American female, based on how they were presenting themselves and what they said and how they said it, it raised a question, and I was encouraging the arbitrator to consider that as a possibility, that there might be something driving them as to why they made the claim against her that they did the way that they did.

(*Hickey Dep.*, at 149).

Mr. Hickey went on to explain that, even if the passengers had a racial motive for having made the charges of misconduct against Ms. Perrywatson, based on the written complaint against

10

her it would not have been apparent to United. He raised this possibility at the hearing because the arbitrator was able to observe the demeanor of the passengers, who had testified there. (*Hickey Dep*., at 150-51). But, there was no evidence that United Airlines acted with a race-based motive. (*Hickey Dep*., at 151). Nor is there any evidence in this record sufficient to raise a genuine issue of material fact that United had seized on the passengers' complaints as a pretext for firing Ms. Perrywatson when the real reason was her age or problems with her knees.

Neither Title VII, the ADA, nor the ADEA are designed to prohibit employers from making decisions that to outsiders may appear ill advised. "[S]o long as [they] honestly believe those reasons, pretext has not been shown." *Ballance v. City of Springfield,* 424 F.3d 614, 617 (7th Cir.2005). There are cases aplenty in which summary judgment has been granted to an employer where the employee was fired for being rude, intemperate, condescending, uncooperative, disrespectful or providing poor customer service. *See e.g., Xiang Li v. Morrisville State College*, 434 Fed.Appx. 34, 35 (2nd Cir.2011); *McIntyre v. Delhaize America, Inc*., 403 Fed.Appx. 448, 449 (11thCir.2010); *Wilson v. Kautex, Inc*., 371 Fed.Appx. 663, 665 (7th Cir.2010); *Cole v. Illinois,* 562 F.3d 812, 814 (7th Cir.2009); *Westlake v. City of Springfield, Ill*., 348 Fed.Appx. 155, 157 (7th Cir. 2009); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 304 (7th Cir.2004); *Frazier v. Nextel Partners, Inc.,* 2005 WL 2000145 at *2 (W.D.N.Y.2005). *Cf.,Waters v. Churchill,* 511 U.S. 661, 676 (1994)(" a manager may legitimately want to discipline an employee based on complaints by patrons that the employee has been rude"). There is no evidence to support the plaintiff's claim that United or the AFA was animated by any statutorily prohibited reason.

11

**D.**

**Ms. Perrywatson's Alleged Disability**

Ms. Perrywatson's claim of disability is based entirely on an injury to her left knee in 2000, and an injury to her right knee in 2004. She provides only two paragraphs of material facts that she contends preclude summary judgment against her. One is the doctor's impression of an MRI of her right knee from April 2008: "Tricompartment osteoarthritic changes that are advanced chondromalacia patella without evidence of meniscal tear." (*Plaintiff's Statement of Material Facts*, ¶ 1; Attached Ex.). This, of course, is contrary to her claim that she *has* tears to the meniscus in both knees. So, Ms. Perrywatson has suffered some degenerative changes that have resulted in a softening and breakdown of the cartillage that lines the underside of the kneecap. http://www.nlm.nih.gov/ medlineplus/ency/article/000452.htm. Ms. Perrywatson also asserts that she settled all her worker's compensation claims. (*Plaintiff's Statement of Material Facts*, ¶ 1; Attached Ex.). But that does not support a claim of disability or suffice to preclude summary judgment. Other than these assertions, the only facts pertaining to her knee problems come from the AFA's submission, with which in the main Ms. Perrywatson agrees. Of course, those facts do not support a claim of disability.

Ms. Perrywatson injured her right knee on February 11, 2000. She was diagnosed in 2000 with a torn meniscus. She treated the pain with Advil. (*Defendant's Statement of Material Facts*, ¶ 16). A few months later, in August 2000, Ms. Perrywatson had surgery on the knee, and then underwent a regimen of vocational rehabilitation. Between the injury on February 11, 2000, and her return to work in April 2003, Ms. Perrywatson was on an occupational injury leave of absence from United. (*Defendant's Statement of Material Facts*, ¶ 17). Ms. Perrywatson hurt her left knee on July 20, 2004. The diagnosis was a torn meniscus. (*Defendant's Statement of Material Facts*, ¶ 18).

12

Treatment began with physical therapy, but proceeded to another surgery on February 10, 2005. Then, there was more physical therapy. Between the injury on July 20, 2004, and her return to work on January 31, 2006, Ms. Perrywatson was on another occupational injury leave of absence from United. (*Defendant's Statement of Material Facts*, ¶ 19).

During the summer of 2005, Ms. Perrywatson tried to return to work and cut her leave short. United required her to be evaluated by an independent medical examiner, Dr. Komblatt, on June 29, 2005. The doctor recommended that Ms. Perrywatson undergo a functional capacity evaluation to determine whether or not she could perform the work of a flight attendant. (*Defendant's Statement of Material Facts*, ¶ 20). The results of that evaluation were positive: "The discrepancy between job/occupational demands and client's abilities is minimal, making prognosis for return to work very good." (*Defendant's Statement of Material Facts*, ¶ 21). Her own physician told her to remain off work and continue her rehabilitation until January 2006. (*Defendant's Statement of Material Facts*, ¶ 22).

When she finally did return to work, Ms. Perrywatson had to undergo "recurrent" training – a review of emergency and evacuation procedures – which she successfully completed. (*Defendant's Statement of Material Facts*, ¶ 23). While she insists her injuries continued to affect her, causing pain or swelling and that standing or sitting for unusually long periods of time caused her pain, aside from the periods she was on doctor-ordered, occupational injury leave, Ms. Perrywatson was always able to perform her job. She did not have to miss work to cope with her injuries. She managed her work schedule by bidding for trips that did not unduly strain her. (*Defendant's Statement of Material Facts*, ¶ 25). Ms. Perrywatson cannot list any daily life activities that required her to sit or stand for unusually long periods. Significantly, she is unable to

name any activities that she was physically unable to perform during this time period, although she

did have to stop bike riding or dancing because those activities resulted in swelling. (*Defendant's

Statement of Material Facts*, ¶ 24). *See* discussion *infra* at 17.

On February 27, 2007, Ms. Perrywatson was in a hotel van that stopped abruptly, and she

jarred her knee. She iced the injury that night and was able to work her flight the next day. She

filed an occupational injury report but did not have to go on leave. (*Defendant's Statement of

Material Facts*, ¶ 26).

## II.
## ANALYSIS

Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing

sufficient to establish the existence of an element essential to [her] case, and on which [she] will

bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Cleveland v.

Policy Management Systems Corp.*, 526 U.S. 795, 805-806 (1999). One of the principal purposes

of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses,

and it should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp.*, 477

U.S. at 323-324. See *supra* at 6.

As an ADA plaintiff, Ms. Perrywatson bears the burden of proving that she has a "disability"

as defined by the Act. *Cleveland*, 526 U.S. at 806. The statute gives Ms. Perrywatson three options.

She can prove she has "a physical or mental impairment that substantially limits one or more of the

major life activities"; "a record of such an impairment"; or that she is "being regarded as having

such an impairment." 42 U.S.C. § 12102(2). Ms. Perrywatson has indicated in her brief that she is

asserting options "A" and "C," but doesn't go further than that. (*Plaintiff's Memorandum of Law

in Opposition*, at 1, 9, 11-13). Indeed, her "discussion" of the ADA consists entirely of a two-page

block quote of the statute, with no attempt to link any of the law's terms to the facts of her case.

(*Plaintiff's Memorandum of Law*, at 11-13). This sort of unsupported approach usually results in a

waiver. *United States v. McIntosh*, _F.3d_, 2012 WL 6172571, 7 (7th Cir. 2012); *Sheehan v. City of*

*Markham*, 282 F.R.D. 428, 430 (N.D.Ill. 2012)(collecting cases).

### A.
### Ms. Perrywatson Has Failed To Show The Existence Of A Disputed Issue
### Of Material Fact Regarding An Impairment That Limits a Major Life Activity

The regulations interpreting the ADA list as major life activities "caring for oneself,

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29

C.F.R. § 1630.2(I) (2007). Courts have not interpreted this list as being exclusive, but have been

careful not to refer to life activities as being major unless they were "of central importance to daily

life." *Steffen v. Donahoe*, 680 F.3d 738, 745 (7th Cir. 2012). Ms. Perrywatson hasn't interpreted it

either – she has completely ignored it. Nowhere in her Local Rule 56.1 submission does Ms.

Perrywatson reveal the major life activity in which she is limited. She doesn't go into it in her brief

either. One might guess that, with a knee impairment, it could be walking – which could affect

working – but guesswork does not stave off summary judgment, and it is not the court's place to

construct arguments on a party's behalf. *Kossman v. Northeast Illinois Regional Commuter R.R.*

*Corp.*, 211 F.3d 1031, 1038 (7th Cir. 2000); *Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir.1995).[7]

Notably, in *Steffen*, the court did not assume that the plaintiff was substantially limited due

to a work-related back injury. In fact, the court indicated that the plaintiff's failure to identify the

---

[7] There is a mention of "walking" in Ms. Perrywatson's brief, but it is made in violation of Local Rule 56.1 and will not be considered. She quotes her affidavit, which was noncompliant with the rule, as saying ". . . Mr. Hickey offered to assist me. He could see I was having difficulty walking, my right knee was swollen." (*Plaintiff's Memorandum in Opposition*, at 8). Even if Ms. Perrywatson's affidavit were to be considered, it would not raise an issue of material fact. An episode of difficulty in walking from a swollen knee neither constitutes a disability nor is sufficient to raise an issue of material fact regarding one.

major life activity at issue would have been a waiver had he not identified working as the major life activity in the Complaint. *Steffen*, 680 F.3d at 745. Here, the Third Amended Complaint alleges that "[a]t least since 2000, [she] has suffered from a disability, specifically affecting her ability to work, and consisting of torn lateral meniscus of her right and left knees and chondromalcia [*sic*] patellae of both knees." (*Third Amended Complaint*, ¶ 12). So, perhaps she has not waived the question by failing to discuss it in her summary judgment submissions. *Steffen*. At the same time – as noted above – the only piece of evidence Ms. Perrywatson has provided to support her Local Rule 56.1 submissions, a 2008 report of MRI results, belies this allegation as it says there is *no evidence* of a meniscal tear in her right knee. (The evidence shows a prior tear was repaired surgically in 2000, and surgical repair of her right knee occurred in 2005).

Moreover, Ms. Perrywatson's response to the defendant's factual assertions sunder the Local Rule is inconsistent with ¶12 of the Third Amended Complaint and has effectively eliminated "work" as the major life activity at issue here or it has effectively eliminated her claim that her knee injuries constitute a disability because they have affected her capacity to work. Ms. Perrywatson has agreed with all of the defendant's factual assertions pertaining to her physical condition. One of these assertions is that "[d]espite her injuries, aside from the periods she was on doctor-ordered, occupational injury leave, [she] was always able to perform her job [and] did not have to miss work to cope with her injuries." (*Defendant's Statement of Material Facts*, ¶ 25; *Plaintiff's Response to the Defendant's Statement*, ¶ 25).

Then there is the medical evaluation United Airlines required plaintiff to undergo regarding her ability to work – and it is the only such evaluation that is in evidence. The evaluation said that any discrepancy between her capabilities in the wake of her second knee surgery in 2005 were

16

*minimal* and that her prognosis for a return to duty was good.   (*Defendant's Statement of Material*

*Facts*, ¶ 21; *Plaintiff's Response to the Defendant's Statement*, ¶ 21).   A minimal limitation on the

ability to perform a particular job, by definition, is not a substantial limitation.   To be substantially

limited in one's ability to work, one must be significantly restricted in the ability to perform more

than just a single job or the particular job that one held before he acquired a disability. 29 C.F.R. §

1630.2(j)(3)(I); *Steffen*, 680 F.3d at 745, n.5.   Ms. Perrywatson does not argue, or even claim, that

she was restricted in her ability to perform a broad range of jobs.

   In addition, Ms. Perrywatson has effectively agreed with the AFA that she cannot name a

single activity – let alone a major life activity – that she was unable to perform as a result of her knee

impairments.   (*Defendant's Statement of Material Facts*, ¶ 24; *Plaintiff's Response to the*

*Defendant's Statement*, ¶ 24).   She did give up dancing and riding her bike because those pursuits

caused her knee to swell; but she makes no claim, nor could she, that either of those activities were

major life activities.

   In her Local Rule 56.1 response to defendant's statement of facts, Ms. Perrywatson vaguely

suggests that her concessions as to her abilities were limited to certain periods.   More specifically,

she says the functional evaluation was performed in 2005 and her concession that there were no

activities she couldn't perform pertained to the period beginning in January 2006.   (*Plaintiff's*

*Response to the Defendant's Statement*, ¶¶ 21, 24).   She does not elaborate on these statements in

her brief, so it is difficult to see what she might be getting at.   Perhaps she thinks that there were

certain periods during which she met the ADA's definition of disability, but she does not come out and say this anywhere, let alone argue it and support it with citations to evidence or case law.[8]

This failure to fully develop an argument and support it with pertinent authority operates as a waiver of that argument. *See* cases cited *supra* at 15; *Long-Gang Lin v. Holder*, 630 F.3d 536, 543 (7th Cir. 2010); *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 529 (7th Cir. 2003)("It is not enough for [a plaintiff] merely to refer generally to [the time periods] in her statement of facts; . . . she must identify the legal issue, raise it in the argument section of her brief, and support her argument with pertinent authority."). And, it is not the court's place to take up Ms. Perrywatson's representation and fashion arguments for her. *Kossman*, 211 F.3d at 1038; *Tyler*, 70 F.3d at 466; *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008); *United States v. Alden*, 527 F.3d 653,664 (7th Cir. 2008). Clearly, Ms. Perrywatson has not raised a genuine issue of fact as to whether she has an impairment that substantially limits a major life activity.

## B.
### Ms. Perrywatson Has Failed to Show A Genuine Disputed Issue of Material Fact On the Question Whether The AFA Regarded Her As Having An Impairment That Limits a Major Life Activity

Ms. Perrywatson's other option in this case is to show the Union "regarded her as being disabled." To satisfy the "regarded as" prong, she must offer evidence that the AFA believed that her impairment substantially limited a major life activity. *Hanson v. Caterpillar, Inc.*, 688 F.3d 816, 819 (7th Cir. 2012); *Powers v. USF Holland, Inc.*, 667 F.3d 815, 823 (7th Cir.2011); *Steffen*, 680 F.3d

---

[8] Given these doctor-ordered leaves of absence, it must be stressed that Ms. Perrywatson does not claim she has a record of being disabled under 42 U.S.C. § 12102(1)(B). *See Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011).

at 745.[9]  Of course, given Ms. Perrywatson's Local Rule 56.1 submissions and her brief, this court – not to mention the AFA – is in no better position here than it was in the preceding section because Ms. Perrywatson does not elaborate on the life activities she believes are at issue.  So, once more, "walking" and "working" will be addressed.

In the case of "working," Ms. Perrywatson has to present some evidence that the AFA "regarded h[er] as limited in h[er] ability to perform not merely one particular job but a class or broad range of jobs."  *Powers*, 667 F.3d at 823; *Hanson,* 688 F.3d at 819.  She hasn't presented any.  In fact, she does not so much as allude to the AFA perceiving her as being substantially limited in her ability to work.  The only mention of "walking" comes from her affidavit, which she submitted outside the confines of Local Rule 56.1 and which is insufficient in any event. *See*, *supra* at n.7.

## CONCLUSION

An ADA plaintiff gets nowhere unless she is able to show that she qualifies as a disabled individual under the statute.  *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011).  Similarly, a party opposing a summary judgment motion runs a risk of failure where there has been significant non-compliance with Local Rule 56.1.   That risk becomes even greater when the party fails to develop arguments and support them with admissible evidence and relevant cases.  Ms. Perrywatson has not shown that there is a disputed issue of material fact on whether she is disabled, whether age or disability factored into United's decision to fire her or that the AFA's handling of the arbitration was actuated by her age or supposed disability.  Accordingly, there is no need to

---

[9] The ADA was amended to change the definition of "regarded as" effective January 1, 2009. Because AFA's alleged ADA violations predate the amendment, the pre-amendment version of the ADA governs. *Hanson*, 688 F.3d at 819, n.2;  *Fredricksen v. UPS, Co.,* 581 F.3d 516, 521 n. 1 (7th Cir.2009).

19

address the remaining elements she must show to prevent entry of summary judgment.  The AFA's

motion for summary judgment on the Third Amended Complaint (Dkt. #121) is granted.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 1/7/13